The next case for argument is 15-3152, Cahill v. MSPB. I'm going to let Ms. Lederer unpack. May it please the Court, Jason Romrel on behalf of Petitioner Matt Cahill. At its core, the central issue here is whether or not Mr. Cahill is entitled to a hearing, an opportunity to prove his case on the merits. The Board does not dispute that a March 2012 meeting took place, and in fact, the Board held that Mr. Cahill's allegations are sufficient, taken as true, to establish that he made a protected disclosure at that March 2012 meeting, a protected disclosure regarding the agency's data collection and data management failures in the national campaign against HIV-AIDS. In fact, the Board does not retreat from its statement in its final order that it goes without saying that the potential harm raised by Mr. Cahill's allegations is serious. And the Board does not dispute that Mr. Cahill sufficiently alleged that adverse actions were taken against him within a reasonable time of his protected disclosure. The only issue here is whether or not Mr. Cahill sufficiently alleged that the individuals who retaliated against him, in fact, had knowledge of his protected disclosure. And he didn't specifically allege that, right? Mr. Cahill specifically alleged that he made his protected disclosure at the March 2012 meeting, and that that meeting was attended by several specific individuals or titles of individuals. For example, Mr. Cahill alleged that the March 2012 meeting was attended- Yeah, but some of the alleged action that was taken against him included what his supervisor, who was not at the meeting, and I think we all agree that, right? His new supervisor was not at the meeting. And he alleges that her conduct was in retaliation for that conversation. How do we get from point A to point B with respect to, at least, the action she took? Right. That's true, Chief Judge Prost, that, in fact, Ms. Crenshaw was a later supervisor and was therefore not at this meeting. But given her role at the agency as a qualitative science and data management team lead, and they go to the very heart of the data collection and data management responsibilities of the agency, that certainly is enough to impute knowledge to her, a constructive knowledge of Mr. Cahill's allegations. Okay, can I just ask, we're basically talking about a jurisdictional determination. Is that done, I don't know, kind of adverse action by adverse action, or is it enough to say, as long as there is jurisdiction over the claim, the individual right of action claim, and let's say Ms. Gnezda, is that how one says her name? Ms. Gnezda, I believe. Ms. Gnezda and Dr. Skarbinski, if we concluded either as the one or both of them that there was a sufficient allegation, would there not be board jurisdiction to hear the whole claim in which you could then prove what may be all by itself you haven't sufficiently alleged that Ms. Crenshaw also would know? That is exactly correct, Your Honor. It only takes one non-frivolous allegation to establish jurisdiction at this point. And the board hasn't treated this as kind of individual action by individual action for jurisdictional purposes? No. In fact, I know we cite a precedent on this point in our brief, but for example, in Ontivero v. Department of Homeland Security, that's 117 NSPR 600, the board specifically spells that out, that it will take one allegation at a time in determining the non-frivolous allegation. It doesn't lump them together and require that all of them. Does that case say, if we find one allegation is enough, then the whole case will come in front of us even, or does it go on and separate and say, okay, you've got a case only as the allegation number one, the rest, you know? We believe that here one non-frivolous allegation is enough to establish jurisdiction. And if Mr. Cahill is able to prove at a hearing on the merits that other individuals retaliated against him had knowledge of his protected disclosure, then those would be considered at a hearing on the merits. But I think it's important to note that the non-frivolous allegation standard at this point doesn't require Mr. Cahill to actually prove his case. And further on your point, Judge Toronto, the individuals, many individuals that Mr. Cahill did identify as retaliating against him fit squarely into the titles of individuals that were, in fact, at the March 2012 meeting. And can I just double check something that at least registered as significant to me when I first came across? There are only two or three people under those either titles, or there's one of the management or something, and there are only two managers, or there are the two divisions. I don't know if division is the right term, but... Correct, correct. There's two. So what we're talking about here are two specific groups, the behavioral and clinical surveillance branch, BCSB, and the quantitative science and data management group, or QSDM. And these are actually specifically defined groups within the Center for Disease Control's National Center for HIV-AIDS, which is obviously a branch of the CDC. Now managers, of course, connotate someone in a hierarchy that has control or directs the group. And there are really only two people for each of these branches that fall under those categories. For QSDM, there's a branch chief. So I understand that what you're saying is that there is more than one assistant branch chief. It sounds like there may be two. So it doesn't necessarily identify one individual? It's true that there's a branch chief and an assistant branch chief, Your Honor. Oh, in other words, there's one assistant branch chief stating that title identifies the individual. Stating an assistant branch chief would, for example, BCSB or QSDM would identify that individual. I would note that Mr. Cahill's allegation here was that QSDM management and BCSB management was in attendance at the meeting. I'm hearing a little lack of clarity. Let me move to the next title. Deputy Branch Chief of QSDM. Is that one person? Your Honor, we believe that that was a misstatement in the record by the board to call that person the deputy branch chief. Other parts of the record clearly identify that person as the assistant. How about Branch Chief of QSDM? Is that one person? That is one person. That's one person. Yes. And the BCSB Clinical Outcomes Team Lead, is that one person? That is one person. That is one person. But I think the original point is that your allegation goes to BCSB management, QSDM management, and you're saying that that doesn't necessarily, isn't confined to one individual, but there are only a couple that could be. That's correct. That's correct. In the neuro-universe. What are we to make of what, let's assume we look at this and we think we need that gave some further meat to the bones of this identification. The government makes an argument, I think, that that shouldn't be something that you can necessarily rely on in establishing jurisdiction. So what say you? I believe, Your Honor, is referring to the evidence submitted by the agency itself, Ms. Ginez's personal notes. Yeah. Yeah. And the note identifying who was at the meeting. Talking about the meeting. Your Honor, certainly the non-frivolous allegation standard is designed to test the sufficiency of Mr. Cahill's allegations, and it is our position that the sufficiency of his allegations is enough to pass muster under the non-frivolous allegation standard. Taken as true, his allegation that BCSB managers, team leads, project leads, and QSDM management were at this meeting is enough to establish at least a non-frivolous allegation that three of the four alleged retaliators had direct knowledge. Ms. Ginez's notes further add to that and show that his allegation is indeed not frivolous because they, in fact, confirm, one, that Ms. Ginez herself personally had knowledge of the disclosure. Whether or not she was at the meeting herself or was simply told about this, her role as an assistant branch chief, she may have been told about this by the actual branch chief, but whether she found out about it one way or the other is really besides the point. It's the adequacy of Mr. Cahill's allegation. He's not required to prove it at this point. So to answer your question, Your Honor, Ms. Ginez's notes are certainly helpful, and this court has held in cases, for example, like Doral, that the board may consider evidence submitted by the agency in deciding the non-frivolous jurisdictional standard, but at the end of the day, it's really the sufficiency of the allegations in Mr. Cahill's complaint. Moving on a little bit to the board's actual application of the non-frivolous allegation standard, Your Honors, it's difficult to imagine a legal standard that is lower, in fact, than the non-frivolous allegation standard, and here the board essentially required Mr. Cahill to prove the sufficiency of his allegation, but this court's case law and the board's case law in its own regulations clearly establish that the non-frivolous allegation is merely an assertion that, if proven, could establish the matter at issue. Mr. Cahill's allegation that these individuals were at the meeting is enough to establish on its face that the alleged retaliator, specifically Dr. Skarbinsky and Assistant Branch Chief Ms. Gnazda and Branch Chief Timothy Green, at the very least, had knowledge of his protected disclosure. And I'd like to reserve the rest of my time for rebuttal, but thank you. Good morning. Good morning. May it please the Court. The question in this case is whether Petitioner met his burden to make a non-frivolous allegation that the agency managers who allegedly retaliated against him actually knew of his protected whistleblowing disclosures. And to establish board jurisdiction over his IHRA appeal, Petitioner must satisfy the board's knowledge and timing test. The test has two parts. Petitioner must make a non-frivolous allegation that the deciding officials knew of his disclosures, and also Petitioner must show that the adverse action was initiated within a reasonable time of those disclosures. Can I just step back a minute? Yes. And as I read the record, it appears that this issue was never brought to the fore until the board actually decided this appeal on its, the AJ's, reconsidered the AJ's opinion, right? I mean, the AJ decided this case on different grounds when he rejected the claim. Yes. And the government, I guess, at least filed briefs or had some, the agency had some submission in at least two parts, before the AJ and then before the board, and never, in my reading the records, you can correct me if I'm wrong, did the government, did the agency bring forward the paucity of the evidence with regard to whether or not these, these individuals were at the meeting, the people who took action against him, knew about it, right? Correct. The agency did not make this argument. The board considered the evidence and made its own determination on this issue that... Isn't that a bit problematic? I mean, it seems like the other side then, I mean, obviously there's a little confusion even to this day in the government's brief about who, what all people were talking about and what individuals were involved. Isn't that a risk and really a problem for the board to have raised this in the first instance on their own in its decision, where this issue was never discussed or debated or raised in the briefing below? Well, if I could point out, the administrative judge issued a jurisdictional order in the underlying case, and that's at, let's see, page, that's at page A76 of the record. The relevant language, notifying petitioner of his burden to establish a jurisdiction over this IRA claim, it's the second paragraph down on this page, says a non-frivolous allegation that a protected disclosure or activity was a contributing factor in the decision to take or fail to take a personnel action against you is a detailed factual allegation that you disclosed one of the above matters or engaged in one of the protected activities and that agency officials responsible for the personnel action were aware of your disclosure or activity and acted within such a time that a reasonable person could find that the disclosure or activity contributed to the action. Okay. And then in response to that order, petitioner, who was represented by counsel both before the AJ and before the board, submitted a jurisdictional brief. Relevant part is on page A91, where he just reiterates item line 35. On March 22, 2012, there was a group meeting with BCSB management, team leads, project leads, and QSDM management, which is the exact same language he uses in all his filings before the board, making no attempt to further elaborate or specify. And then what did the agency say? The agency, I believe, responded, and I don't believe the agency addressed that issue in its brief. Right. But I kind of take it that that's the point, at least I was getting from the chief judge. He has this allegations, this is A145, the attachment to the OSC complaint, I assume. Was that before the AJ at the stage? Yes. Yeah. So, I mean, he said, it's all about this sentence about the March 22 group meeting, how to interpret that. And then he's told by the AJ, you got to establish jurisdiction. He says, I said this, the agency doesn't come back and say, who the heck are these people? Management. It's not even a number adjective in front of it. Could be any number of people. Why at that point can he later then be held, be held against him that he didn't provide further specificity, when this point is just uncontested? Well, it was contested because it's part of, it's an element of petitioner's burden to establish the board's jurisdiction. I'm sorry. It was not specifically contested as to this issue by the agency saying, who these people might be? Anybody. Right. It wouldn't be Ms. Gnezda or et cetera. I can't explain why the agency didn't emphasize that in its brief. More of the focus at that time was discussing whether the disclosures themselves were protected. Right. Nor did the administrative judge when he issued his decision, or she issued her decision, right? One of the bases for rejecting the claim was not the fight we're having now over those people at the meeting, right? Correct. The administrative judge found that the disclosures were not protected. The board modified that decision to find that the disclosures were protected, but that he didn't establish the knowledge timing test, which often happens. Right. So you pointed us to this proof of claim, which cites kind of boilerplate what he needs to prove, but Judge Toronto pointed out the agency didn't go to the AJ and say, look, their claim is deficient in that regard. And the administrative judge didn't say their claim is deficient in that regard, right? Correct, Your Honor. But the decision under review here is the board's decision, which did go into that issue and make that determination. So we would argue that the sufficiency of the board's decision, which modified the AJ's decision, should be what's the focus of the analysis here. Can I ask you the same question about all or nothing or separateness? What's the board's practice or position, I guess, as you stand here today, about what would happen on this assumption, that there's enough evidence for a non-frivolous allegation that Ms. Gnezda knew? At that point, does Cahill's whole case go forward, or does one say, yes, OK? Yes. One allegation of non-frivolous will be sufficient to establish jurisdiction. However, in this case, given his generalized assertions, Petitioner just did not meet the specificity for either proving direct knowledge for any of these alleged retaliators or even imputing knowledge to them. Well, wait, there's at least one person where it's pretty clear that one individual was there, right? I can't remember which one. But I mean, these were BCSB team leaders, and one individual that was alleged to have taken action against him was one of those team leads, right? Correct. But from his unspecific allegations, it's impossible to tell which team leads were there. He just says team leads. So it could have been this person. It could have been another team. Do you know how many? Does the record reflect how many BCSB team leads there are? It might be better directed to Petitioner for that. I'm not sure, but there's definitely more than one. And so if there's more than one, he says in plural, team leads. So that means if there are two of them, they were both there, right? If there were only two team leads, I believe that you could imply that both of them were there from the phrase team leads. Well, there's nothing in the record. There's nothing in the record indicating that there are more than two. If there were two or more than two, I don't believe that's in the record. Do we even know if there's more than one lead per team, or is there a one-to-one correspondence between leads and teams? I believe there's one lead per team, but I might ask for clarification on that. So the standard for a non-frivolous allegation, as Petitioner points out, is lower than the standard for proof on merits, which is preponderance of evidence. However, the board's regulations do require that a non-frivolous allegation be more than Here, when we just have a generalized assertion that these groups of people were at this meeting, that does not meet the standard of providing sufficient evidence to create a material fact issue of board jurisdiction. The cases that Petitioner relies on in order to support his claim actually involve much more specific allegations than this case. For example, the Colbert case, Petitioner alleges that in that case the appellant did not identify any supervisors by name, but in fact he did. They're identified by initials in the decision. He stated that his nursing supervisor was identified as VB, that he told his nursing supervisor he was going to contact OSC about his complaints, and that her input was used on his performance evaluation, which is a pretty direct allegation of knowledge. He also identified another supervisor and manager called LG, and it appeared that that supervisor had requested a summary review board of the appellant. Likewise, in the Daniels case, Petitioner alleges that the appellant in Daniels only alleged that her, quote, manager is new of the disclosures, but she was actually much more specific. Again, she said she had discussed her disclosures to OIG with the regional office director, who she identified by name, during a meeting, and that that person, whose name was Jensen, acknowledged knowing about the investigation, and that she had also authorized OIG to reveal her identity, and agency officials had admitted to accessing her email, presuming that they knew about her disclosure. That seems to be pretty dispositive of the final issue in litigation. I mean, he's not required here to establish that the impact did it. It seems like the scenarios you're painting are pretty dispositive. I mean, it's the end of the case. Yes, they knew. He's proven they knew. Something less is required in this context, is it not? Well, we are not aware of any precedent where the board or this court has found that the sort of general allegations of knowledge in this case, as in this case, were enough to meet the non-purpose standard. Petitioner hasn't cited any, and we're not aware of any. So, you know, in the Colbert and Daniels cases, those involved a non-frivolous allegation burden of proof. So, whether or not the appellants would have prevailed on the merits, they certainly met the non-frivolous allegation standard in those cases. Well, it's hard to have a lot of cases where the government finds where they prevail. I mean, if the board says, this is a non-frivolous allegation, and we're going forward, there is only then, it would be up to the agency to appeal that, and presumably we don't do that very often, right? Perhaps, but essentially, given the standard which is stated in the regulations, we would ask this court to find that a more specific allegation than the one presented by Petitioner is required to prove the non-frivolous allegation. For the non-frivolous standard to have meaning, it can't just be any allegation, it has to mean something. If the word non-frivolous is in there, it can't just be a generalized allegation, and we would also argue that accepting such a generalized allegation, as in this case, would only encourage appellants to be as broad as possible when they're describing who knew of their disclosures. Just cover everybody. Why not just say, the entire agency was at this meeting, and therefore, anybody who retaliated against me. That, I guess, is where, at least in part, the distinctiveness of the fact that the agency didn't challenge the specificity of this allegation. If it were, in another case, highly general, let's call this general or something more general and the agency says, that's not enough, then the claimant has an opportunity to try to be more specific, and if he or she can't, that tells you something. But here, we don't have the inference that might be drawn from the inability to get more specific because there wasn't an opportunity. Right. Well, again, I would just emphasize that petitioner was represented by an attorney. The judge issued a jurisdictional order, which was very detailed as to all the elements of this burden, and that attorney, it was his responsibility to make a specific pleading. The fact that the case- Yeah, but you're suggesting that he should have known that his allegations were insufficient, even recognizing that the agency counsel didn't recognize or have any problem with his allegations with regard to that issue. Well, I don't know that. I would say the agency counsel didn't recognize it. The focus of the analysis was on the preliminary issue of whether the disclosures were protected and they just never reached the issue of whether the knowledge timing test was met. I don't know if that was a specific strategy on the part of the agency or just that was the main issue before them at the time. Once that issue was resolved and it was determined that the disclosures were protected before the board, the next part of the test comes into play. So I would be wary of drawing any conclusions from the fact that this wasn't briefed before the AJ because that wasn't the focus of the arguments there. But Petitioner was informed of his burden and he had the opportunity to brief any issues that he wished to brief and present any evidence that he had. I also note that the notes from Ms. Gnezda that he attempts to rely on now were part of the agency file. They weren't brought forward by Petitioner's attorney at any point as dispositive evidence that he met his non-verbalist allegation. What is your position about what, if any, treatment of those notes we should give? Well under the summary judgment standard that the board and this court uses, the agency or the board can consider evidence submitted by the agency to shed light on the sufficiency of Petitioner's allegations. If I could just say something quickly about regard to those notes though, they're on page 8322 of the record, the March 22, 2012 bullet point. Some of the individuals that she identifies as being at the meeting are different from the categories that Petitioner identifies. For example, she doesn't identify any QSDM managers as being at the meeting and most of the people that are the alleged retaliators in this case are QSDM managers. So as far as the value of this evidence is for shedding light on sufficiency of the allegations, it's questionable whether they're even talking about the same people. Time's up. Thank you. So to be clear, these allegations that Mr. Cahill made were not, in fact, generalized allegations. They were specific. They identified specific titles of individuals who were at the meeting, at the March 2012 meeting. A conclusory or generalized allegation would be one in which Mr. Cahill would simply state, the retaliators had knowledge of my protected disclosure. But Mr. Cahill did much more than that, he specifically specified how they had knowledge of the retaliation, that there was a meeting where he made his disclosures and he identified specific groups of people that were at that meeting. So my friend suggests that a reversal here would somehow open the floodgates for the MSPB to receive all sorts of unspecified and generalized allegations. I would respectfully disagree with that conclusion. I also think it's telling that the agency never did dispute the sufficiency of Mr. Cahill's notes reflect why. Mrs. Gnazda specifically stated in her personal notes that the meeting was attended not just by BCSB team leads, but by all BCSB team leads, which would have necessarily included... Do you know how many teams there are? My understanding is that there are approximately two to three teams within BCSB, but that's not reflected in the record, exactly how many teams there are. And your understanding, again, not reflected in the record, is one lead per team? Yes. So we're talking about a number of people who could fall into this category, again, not in the record, less than a hand. Right, right. But I think it's important to note that an allegation that the meeting was attended by BCSB team leads or managers is at least plausible in its face that these alleged retaliators like Dr. Skarbinsky, Ms. Gnazda, would have knowledge of these protected disclosures, whether they were one of the team leads or managers that was actually there, or whether they heard about it, or it was imputed to them from people who were actually in attendance. These are small groups within a group within the CDC, within the agency. So it's certainly plausible on its face, and a reasonable inference could be drawn, especially... Well, not if we... We don't have any information, though, about how large this whole unit is, right? I mean, yeah, you're right, if the unit contains all of 20 people, then it's very likely to the meeting that those 10 talk to the other 10 about what happened, but we don't have any of those numbers, right? There's nothing specific in the record that identifies that. On the management side, we do know from the emails that Mr. Cahill submitted in response to the order to show jurisdiction, there's emails and performance evaluations signed by the branch chief and the assistant branch chief of QSDM, for example. So we know that those individuals are specifically identified as ones who would fall under the management title, but we don't have specific numbers of who is in these groups. But I do think it's important that the agency never disputed the sufficiency of this allegation, and in fact, if you look at Ms. Gnez's notes, she uses similar types of descriptors to identify these people. BCSB team leads, BCSB branch chief. This was typical parlance within the agency to describe people in this manner, and if the board, in fact, had a question as to whether or not these allegations were specific enough to identify people, the appropriate remedy would have been to remand back to the administrative law judge to reopen the record to address the specific issue, especially given that it was never contested by the agency and there was not a proper opportunity for Mr. Cahill to appropriately develop the record on that point. But you'd much prefer that we did not do that and that we just reverse and say there's jurisdiction. At this point, I think it's clear for all the reasons stated in our brief and today that there's enough of an allegation in his complaint to establish jurisdiction and that judicial efficiency would best be served by allowing him to proceed forward with a hearing on the merits. That's really what he's entitled to. I would just address shortly, too, even on a motion to dismiss standard, which we argue is the appropriate standard comparator to the non-frivolous allegation standard, it's the comparator that the Fifth Circuit has recently accepted in the Alavez case. Elements outside of the complaints can still be considered. That routinely happens on motions to dismiss where the court takes judicial notice of something or some sort of form of uncontested fact is admitted into the record. So there's nothing prohibiting this court or the board from considering Misconnected's notes. In fact, they were submitted to rebut Mr. Cahill's allegation that there was, in fact, a protected disclosure made. I see that my time is up. Thank you. Thank you very much. We thank both sides and the case is submitted.